**FILED - GR**

January 22, 2009 4:22 PM

RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald____ /_____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**1:09-cv-60**

**Janet T. Neff**
**U.S. District Judge**

| | |
|---|---|
| STEPHEN OUWINGA, LEANN OUWINGA, DAVID OUWINGA, CHRISTINE OUWINGA AND STONEY CREEK FISHERIES AND EQUIPMENT INC. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BENISTAR 419 PLAN SERVICES, INC., BENISTAR LTD., JOHN HANCOCK VARIABLE INSURANCE COMPANY, JOHN HANCOCK LIFE INSURANCE COMPANY, EDWARDS ANGELL PALMER & DODGE LLP, JOHN H. REID, III, KRIS LESLEY, ROBERT FOGG, AND PASCIAK JOHN HANCOCK AGENCY LLC f/k/a WEST MICHIGAN PASCIAK GENERAL AGENCY,<br><br>Defendants. | Case No. _____<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs Stephen Ouwinga, Leann Ouwinga, David Ouwinga, Christine Ouwinga and

Stoney Creek Fisheries and Equipment (collectively, "Plaintiffs"), on behalf of themselves

and all others similarly situated, for their Class Action Complaint ("Complaint") against

Benistar 419 Plan Services, Inc., Benistar Ltd., John Hancock Variable Insurance Company,

John Hancock Insurance Company, Edwards Angell Palmer & Dodge LLP, John H. Reid, III,

Kris Lesley, Robert Fogg, and Pasciak John Hancock Agency LLC f/k/a West Michigan Pasciak General Agency (collectively referred to as the "Defendants") allege as follows, upon information and belief and the investigation of counsel:

## I.

### FACTUAL SUMMARY

1.    This case stems from a conspiracy among the Defendants to defraud employers and employees such as the Plaintiffs into adopting welfare benefit plans that are supposedly in compliance with § 419A(f)(6) of the Internal Revenue Code. The scheme to defraud Plaintiffs and other Class members was conducted through a pattern of racketeering activity (mail and wire fraud) and was accomplished through the efforts of an association-in-fact enterprise.

2.    Section 419A(f)(6) provides, in pertinent part, that in order to receive preferred tax treatment, the plan must be one in which (i) more than one employer contributes, (ii) no employer normally contributes more than ten percent of the total contributions contributed under the plan by all employers and (iii) the plan does not maintain experience-rating arrangements with respect to individual employers.

3.    Historically, 419A welfare benefit plans used various vehicles to provide the benefits for which they were initially designed. However, in recent years Plan sponsors such as the Benistar Defendants often used various types of life insurance policies as the central, if not the only, funding vehicle within such plans

4.    The John Hancock Defendants, corporately and through their agents such as Defendants Lesley and Fogg, are engaged in the business of selling life insurance policies to

welfare benefit plans allegedly in compliance with § 419A(f)(6) and assisting the Benistar Defendants in promoting such plans.

5. The Benistar Defendants, corporately and through their agents such as Defendants Lesley and Fogg, promoted and sponsored welfare benefit plans allegedly in compliance with § 419A(f)(6) and assisted the John Hancock Defendants in the sale of life insurance policies to such plans.

6. The Benistar Defendants, after securing a legal opinion and other assistance from the Edwards Angell Defendants, proceeded to work together with the John Hancock Defendants to develop and market 419A(f)(6) plans.

7. The John Hancock and Benistar Defendants, with the assistance from the Edwards Angell Defendants, devised a scheme to sell abusive and illegal tax shelters under the auspices of Section 419A(f)(6).

8. All of the Defendants knew or should have known that these arrangements likely would be heavily scrutinized by the IRS, be deemed abusive tax avoidance transactions by the IRS, and/or expose those participating in such arrangements to costly IRS audits, including substantial tax liabilities, penalties, and interest.

## II.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(d) because the Class Action Fairness Act of 2005 confers diversity jurisdiction upon this Court, as members of the proposed Class are citizens of states that are different from Defendants' state(s) of citizenship, and the aggregate amount in controversy exceeds $5,000,000. In addition, this

Court has jurisdiction over Plaintiffs' claims based on 28 U.S.C. §1331 and/or 28 U.S.C. §1337, which provide jurisdiction for Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. §1961 *et seq*.; and 29 U.S.C. §1367, which provides jurisdiction for supplemental state claims, including common-law fraud and conspiracy claims.

10. Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Michigan.

11. Without limiting the generality of the foregoing, each Defendant (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) has:

       a. transacted business in Michigan;

       b. contracted to supply or obtain services or goods in Michigan;

       c. availed themselves intentionally of the benefits of doing business in Michigan;

       d. produced, promoted, sold, marketed, and/or distributed their products or services in Michigan and, thereby, have purposefully profited from their access to markets in Michigan;

       e. caused tortious damage by act or omission in Michigan;

       f. caused tortious damage in Michigan by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

       g. committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Michigan to Plaintiff and members of the Class while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed

PLAINTIFFS' ORIGINAL COMPLAINT                            Page 4

or services rendered in such jurisdiction;

h.     engaged in a conspiracy with others doing business in Michigan that caused tortious damage in Michigan; and

i.      otherwise had the requisite minimum contacts with Michigan such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

12.     Venue is proper under 28 U.S.C. § 1391, because acts giving rise to the causes of action alleged in this complaint arose in, among other places, the Western District of Michigan, and the harmful effects of Defendants' fraud and wrongful conspiracy were felt in, among other places, the Western District of Michigan.

### III.

### THE PARTIES

**A.    Plaintiffs**

13.     Plaintiff Stephen Ouwinga is a resident of Ottawa County, Michigan.

14.     Plaintiff Leann Ouwinga is a resident of Ottawa County, Michigan.

15.     Plaintiff David Ouwinga is a resident of Newaygo County, Michigan.

16.     Plaintiff Christine Ouwinga is a resident of Newaygo County, Michigan.

17.     Plaintiff Stoney Creek Fisheries and Equipment Inc. ("Stoney Creek") is a Michigan corporation with its principal offices located in Newaygo County, Michigan.

**B.    Defendants**

18.     Defendant Benistar 419 Plan Services, Inc. is, upon information and belief, a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

19. Defendant Benistar Ltd. is, upon information and belief, a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut. Defendants Benistar 419 Plan Services, Inc. and Benistar Ltd. are sometimes collectively referred to herein as the "Benistar Defendants".

20. Defendant John Hancock Life Insurance Company ("JH Life") is a Massachusetts corporation with a principal place of business at John Hancock Place, Boston, Massachusetts, 02117.

21. Defendant John Hancock Variable Life Insurance Company ("JH Variable") is a Massachusetts corporation with a principal place of business at John Hancock Place, Boston, Massachusetts, 02117.

22. Defendant Pasciak John Hancock Agency LLC ("Pasciak Agency") is a Michigan Limited Liability Company with a principal place of business at 333 Evergreen NE, Suite 200, Grand Rapids, MI 49525. JH Life, JH Variable, and Pasciak Agency are sometimes collectively referred to herein as the "John Hancock entities".

23. Defendant Edwards Angell Palmer & Dodge LLP ("Edwards Angell") is a Delaware corporation with a principal place of business at 111 Huntington Ave., Boston, Massachusetts, 02199

24. Defendant John H. Reid, III is an individual and citizen of Connecticut. This Defendant is, and was during the relevant period, a partner with the law firm of Edwards Angell This Defendant may be served at 18 Old Musket Road, Glastonbury, CT 06033-3332. Edwards Angell and Reid are sometimes collectively referred to herein as the "Edwards Angell Defendants".

25.     Defendant Kris Lesley is, upon information and belief, a resident of Newaygo County, Michigan.

26.     Defendant Robert Fogg is, upon information and belief, a resident of Kent County, Michigan. Defendants JH Life, JH Variable, Pasciak Agency, Lesley, and Fogg are sometimes collectively referred to herein as the "John Hancock Defendants".

## IV.

## FACTUAL ALLEGATIONS

### A.     The IRS Scrutinizes Abusive 419A(f)(6) Plans

27.     In May of 1995 (Notice 95-34), the IRS addressed whether certain trust arrangements qualify as multiple employer welfare benefit funds under § 419A(f)(6). The IRS concluded the arrangements do not satisfy the requirements of § 419A(f)(6) if, *inter alia,* (1) the arrangements provide deferred compensation; (2) the arrangements are separate plans maintained for each employer; (3) the arrangements are experience rated; and (4) the employer contributions are nondeductible prepaid expenses.

28.     In February of 2000 (Notice 2000-15), the IRS reiterated the transactions described in Notice 95-34 were listed transactions for purposes of the tax shelter disclosure, registration and list maintenance requirements.

29.     In Private Letter Ruling 200127047 (July 9, 2001), the IRS determined a trust providing death and severance benefits was not a welfare benefit plan, but a nonqualified deferred compensation. Accordingly, employer contributions were not deductible.

30.     In August of 2001 (Notice 2001-51), the IRS supplemented Notice 2000-15 and confirmed the type of transactions listed in Notice 95-34 were listed transactions for purposes of the tax shelter disclosure, registration and list maintenance requirements.

31.     In July of 2003, the Internal Revenue Service published final regulations elaborating the requirements to qualify as a 10 or more employer plan. under § 419A(f)(6) of the Internal Revenue Code and thus be excepted from the deduction limits generally applicable to welfare benefit funds under sections 419 and 419A. As in the proposed regulations taken by the IRS in July of 2002, the final regulations provide that a plan exhibiting one or more of five specified characteristics is not a 10 or more employer plan unless it is established that § 419A(f)(6) is satisfied. Three of the characteristics -- that plan assets are separately accounted for among employers, that the plan does not provide for fixed welfare benefits for a fixed coverage period for a fixed price, or that the plan charges an unreasonably high amount for the covered risk -- remain unchanged. The Service also confirmed that with respect to the characteristic of charging differing amounts to employers that are not reflective of differences in risk or rating factors commonly taken into account in manual rates used by insurers, only differences in charges that are reflective of current risk factors are not indicative of experience rating. The requirements must be satisfied both in form and in operation.

32.     Notice 2003-76 issued in November of 2003 supplemented and superseded Notice 2001-51 and reaffirmed the transactions described in Notice 95-34 are listed transactions for purposes of the tax shelter disclosure, registration and list maintenance requirements.

33.     In September of 2004, the IRS issued Notice 2004-67 to supplement and supersede Notice 2003-76. The Notice confirms the transactions described in Notice 95-34 are

listed transactions for purposes of the tax shelter disclosure, registration and list maintenance requirements.

## B. The Defendants Promote the Benistar Plan to the Plaintiffs

34. In or about September 2001, the Individual Plaintiffs were approached by Defendant Lesley (a former high school classmate of Plaintiff David Ouwinga) about John Hancock financial products that Lesley thought the Plaintiffs might be interested in. At the time, the Individual Plaintiffs were majority owners of Stoney Creek, an aquaculture products company founded by Plaintiffs Steve and LeAnn Ouwinga in 1970 that had grown to serve 22,000 customers in all 50 states.

35. On September 6, 2001, the Plaintiffs met with Lesley and his supervisor, Defendant Fogg, to discuss the services and products that John Hancock could provide them. During this meeting, Lesley and Fogg indicated that the Plaintiffs had been subjected to what Lesley described as "incredible tax liabilities" over the prior several years that Lesley and Fogg would be able to help them reduce. These Defendants told the Plaintiffs that they would research these tax issues and get back to them.

36. On October 1, 2001, Lesley and Fogg met with the Individual Plaintiffs again and presented them with the Benistar 419 Plan. The Plaintiffs later discovered that Fogg had attended a seminar in the United States Virgin Islands (presumably hosted by Benistar and/or John Hancock) where he learned about the Benistar 419 Plan. During this meeting, Lesley and Fogg (as representatives of the John Hancock Entities and pursuant to the prearranged common plan and scheme between all of the Defendants) explained the purported tax benefits of the Plan. During this meeting, Lesley and Fogg informed the Plaintiffs that

contributions to the Plan were tax deductible and, in addition, the Plaintiffs could take money out at any time tax-free.

37.     On October 18, 2001, the Plaintiffs, along with their local accountant (not a Certified Public Accountant) and their local attorney, met with Lesley and Fogg again to further discuss the Benistar 419 Plan. Once again, Lesley and Fogg gave a detailed presentation regarding the structure and purported tax benefits of the Plan. During this meeting, Lesley and Fogg also introduced the Plaintiffs to one of their own tax attorneys, who participated telephonically. The John Hancock Defendants' attorney echoed Lesley's and Fogg's representations about the tax benefits of the Plan and provided assurances from a legal background that the Plan was a legitimate way to reduce taxes. The Plaintiffs' local accountant and attorney were impressed with the specialized knowledge of the John Hancock Defendants and their attorney regarding the Plan and, based on Lesley's and Fogg's assurances and representations, saw no reason to disapprove of the Plan.

38.     From the detailed explanations provided by Lesley and Fogg, as well as the mountains of documents that Lesley and Fogg had to support the promised tax benefits of the Benistar 419 Plan, it was clear to the Plaintiffs that Lesley and Fogg had done their homework and were intimately familiar with the Benistar 419 Plan.

39.     In or about late October 2001, Lesley and Fogg provided the Individual Plaintiffs with the following documents:

       a.     Description of the Benistar 419 Plan;

       b.     A document entitled "Why you should use Benistar for your 419 Plan Administration;

    c.    Legal authority for Welfare Benefit Trusts;

    d.    The Benistar 419 Plan Advantage Benefit Plan Trust Operation and related documents; and

    e.    *Expert Insight* Benistar Article.

Pursuant to the prearranged plan between all of the Defendants, these documents were clearly designed to buttress Lesley's and Fogg's representations to the Plaintiffs and provide further confidence for the Plaintiffs in the promised benefits of the Strategy.

    40.    The Individual Plaintiffs were also provided a purportedly "independent" legal opinion dated December 17, 1998 from John H. Reid, III of the prestigious national law firm, Edwards Angell. This legal opinion supported all of the statements made by the John Hancock Defendants to the Plaintiffs about how the contributions to the Plan were deductible under IRC §162. What the Plaintiffs were not told was that Edwards Angell was not an independent law firm, but was rather part of the conspiracy to promote and profit from the sale of the Benistar 419 Plan.

    41.    Based on the representations of Lesley and Fogg (as representatives and agents of the John Hancock Entities and the Benistar Defendants) and the legal opinion of Edwards Angell, the Plaintiffs decided to participate in the Benistar Plan in late 2001 and, as a result, each made large contributions into such Plan. These contributions were used by the Plan to purchase large insurance policies on the lives of the Plaintiffs and to pay significant premiums to the John Hancock Defendants. The initial policies were $4,000,000 for LeAnn Ouwinga, $3,500,000 for Steve Ouwinga, and $10,000,000 for David Ouwinga. At the time

these policies were purchased, each of these individuals had adequate life insurance and had no need for additional coverage.

42. In 2003, the Defendants apparently determined among themselves that the Benistar 419 Plan needed to be modified as a result of pressure from the IRS. Instead of informing the Plaintiffs or the Class that there was a problem with the Plan or that the Plaintiffs or the Class should be concerned about utilizing the tax benefits from the Plan, Lesley and Fogg simply told the Plaintiffs that the IRS had changed the rules and they would need to contribute additional money so that the Plan could purchase brand new life insurance policies to keep the Plan in place. Lesley and Fogg assured the Plaintiffs that, while this might signal that the "loophole" in the Code might be closing soon, there was no reason whatsoever to be concerned about the tax benefits that had already been claimed in prior years or the benefits that were going to be claimed in 2003.

43. To further assure the Plaintiffs and the Class that there was no reason to be concerned about the "new IRS rules", Mr. Reid of Edwards Angell issued letters dated October 24, 2003, November 4, 2003, and December 19, 2003 that indicated that the Benistar 419 Plan was not a tax shelter, was not a listed transaction, and in general terms, remained viable against any challenge by the Internal Revenue Service.

44. The Plaintiffs trusted the advice of their experts – the John Hancock Defendants and the Edwards Angell Defendants – and contributed additional money to continue with the 419 Plan. The Plan then purchased additional policies for each of the Plaintiffs.

PLAINTIFFS' ORIGINAL COMPLAINT                                                                Page 12

45. By letter dated January 23, 2007, the Plaintiffs were notififed by the IRS that their tax returns for the years 2003 and 2004 were going to be examined. The Plaintiffs cooperated fully with the IRS examination and were assessed back taxes, interest, and penalties as a result of the tax benefits they claimed from the Benistar 419 Plan.

## V.

## CO-CONSPIRATORS

46. Whenever in this Complaint reference is made to any act, deed, or transaction of any business entity, the allegation means that the business entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the business' affairs.

47. The acts alleged in this Complaint to have been done by Defendants were authorized, ordered and condoned by their parent business entities and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

48. Defendants were and are engaged in a conspiracy to defraud and each of them are liable for the actions of the other as if they themselves had committed the acts. All Defendants were acting as the agents of the others with either express or implied authority to so act in furtherance of their common goal to operate a RICO enterprise and all Defendants benefited financially therefrom and ratified the acts of the others. Therefore, all Defendants are jointly and severally liable for the actions of every other Defendant committed in furtherance of the conspiracy.

## VI.

### CLASS ALLEGATIONS

49. Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(b)(1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of themselves and the nationwide class of all persons (the "Class Members," the "alleged class" or the "Class") defined below against all Defendants:

All Persons who, from December 17, 1998 to the present, inclusive, (1) participated in and contributed funds to a "welfare benefit plan" administered by Benistar, (2) took tax deductions in the amount of such contributions, and (3) were assessed back-taxes, penalties, and/or interest by the Internal Revenue Service as a result of such tax deductions. Excluded from the Class are: Defendants; Defendants' parents, subsidiaries, and affiliates; anyone receiving referral fees for the plans; and federal governmental entities.

50. Plaintiffs believe that the Class consists of hundreds if not thousands of Class Members geographically dispersed throughout the United States such that joinder is impracticable. These Class Members may be identified from information and records maintained by Defendants or third-parties.

51. The Individual Plaintiffs and the Class Members each and all have tangible and legally protectable interests at stake in this action.

52. The claims of the Individual Plaintiffs and the Class Members have a common origin and share a common basis. The claims of all Class Members originate from the same fraudulent transaction predicated by the Defendants.

53. The Individual Plaintiffs state a claim for which relief can be granted that is typical of the claims of the Class Members. Thus, the class representatives have been the victims of the same illegal acts as each member of the class.

54. If brought and prosecuted individually, each of the Class Members would necessarily be required to prove the instant claim upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

55. The claims and remedial theories pursued by the Individual Plaintiffs are sufficiently aligned with the interests of the Class Members to ensure that the universal claims of the alleged class will be prosecuted with diligence and care by the Plaintiffs as representatives of the Class.

56. There are questions of law and fact common to the alleged class. Such common questions include, *inter alia*:

a. Whether Defendants conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

b. Whether Defendants engaged in a pattern of racketeering activity in violation of RICO;

c. Whether Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting proximately caused and causes injury to the Plaintiffs' and Class Members' business or property or irreparably harmed and harms the Plaintiffs and the alleged class and if so, the appropriate relief to which they are entitled;

d. Whether Defendants' acts and practices constitute violations of applicable law for which Plaintiffs and the Class Members are entitled to recover restitution or damages or for which disgorgement of ill-gotten monies is appropriate;

e. Whether Defendants' actions constitute mail and wire fraud; and

g.     Whether Defendants have been unjustly enriched through the activities described
herein.

57.    Adjudications with respect to individual members of the Class would, as a
practical matter, be dispositive of the interests of the other Class Members who are not parties to
the action or could substantially impair or impede their ability to protect their interests.

58.    Defendants have acted or refused to act on grounds generally applicable to the
Class, making appropriate final relief with respect to the Class as a whole. The prosecution of
separate actions by individual members of the Class would create a risk of inconsistent or
varying adjudications with respect to individual members of the alleged Class which would
establish incompatible standards of conduct for the party opposing the Class. Such incompatible
standards, inconsistent or varying adjudications on what, of necessity, would be the same
essential facts, proof and legal theories, would create and allow to exist inconsistent and
incompatible rights within the plaintiff Class. Further, the failure to permit this cause to proceed
as a class action under Rule 23(b)(1)(A) would be contrary to the beneficial and salutary public
policy of judicial economy in avoiding a multiplicity of similar actions. The Plaintiffs also
allege that declaratory and injunctive relief are appropriate for the Class as a whole, making
certification appropriate under Rule 23(b)(2). The Plaintiffs also allege that questions of law and
fact applicable to the Class predominate over individual questions and that a class action is
superior to other available methods for the fair and efficient adjudication of the controversy.
Therefore, certification is appropriate under Rule 23(b)(3). Failure to permit this action to
proceed under Rule 23 would be contrary to the public policy encouraging the economies of
attorney and litigant time and resources.

59. The named Plaintiffs allege that they are willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.

60. The self-interests of the named Class representatives are co-extensive with and not antagonistic to those of the absent Class Members. The proposed representatives will undertake to well and truly protect the interests of the absent Class Members.

61. The named Plaintiffs have engaged the services of counsel indicated below. Plaintiffs' counsel are experienced in complex class litigation and will adequately prosecute this action and will assert, protect and otherwise represent well the named Class representatives and absent Class Members.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. There will be no difficulty in the management of this action as a class action.

63. The Plaintiffs will fairly and adequately protect the interest of the Class and have no interests adverse to or which directly and irrevocably conflict with the interests of other Class Members.

## VII.

## DAMAGES

64. As a consequence of Defendants' conduct and racketeering violations, Plaintiffs and the other Class members have sustained substantial losses and damage to their business and property in the form of substantial expenses incurred in setting up and establishing the deficient plan, substantial expenses incurred in dealing with the Internal Revenue Service, incurred

penalties and interest, lost retirement benefits, lost other retirement opportunities, and have suffered other damages. All members of the respective Classes were affected in the same manner by Defendants' fraudulent and/or wrongful conduct.

## VIII.

## FRAUDULENT CONCEALMENT, EQUITABLE TOLLING AND CONTINUING VIOLATIONS

65.     Plaintiffs and the other Class members had no knowledge of Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence. As described above, Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through the diligence of the Internal Revenue Service. As a result of Plaintiffs' lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiffs assert the tolling of any applicable statutes of limitations affecting the right of action by Plaintiffs and other Class members.

66.     Moreover, Defendants' actions constitute a continuing violation in that Defendants' fraudulent scheme resulted in financial harm to the Plaintiffs and the other Class members, and each and every contribution to a 419 plan or payment of an insurance premium or administrative fee by those plans is an overt act that injured Plaintiffs and other members of the Class. Upon each and every instance that Defendants failed to disclose their illegal conduct, Defendants knew or should have known that the undisclosed information was material to those consumers who reasonably believed Defendants' conduct to be lawful and not fraudulent.

67.     In addition to its ongoing pattern and practice of fraud, Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four

years from the date of the filing of this Complaint. Such overt acts include the illegal actions regarding the fraudulent scheme described herein.

68.     Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly relied upon representations and omissions constitutes part of a continuing violation and operates to toll any applicable statutes of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## IX.

### ALLEGATIONS RELATING TO RICO

69.     Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1964(c).

70.     At all times relevant hereto, each of Plaintiffs and the Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

## A.     Enterprise

71.     An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

72.     The Benistar 419 Plan is a RICO enterprise (the "Enterprise"). The Enterprise consists of (1) Benistar; (2) the John Hancock Defendants; (3) the Edwards Angell Defendants; and (4) all other persons and entities that solicited persons to participate in the Benistar 419 Plan for the alleged purpose of tax liability reduction as set forth in the opinion letter prepared by the Edwards Angell Defendants.

73.     These individuals and entities formed a purported "employer welfare benefit plan" to use as a RICO enterprise, and individually and through their agents represented to their

PLAINTIFFS' ORIGINAL COMPLAINT                                              Page 19

victims that it qualified as a bona fide plan under IRC §419A(f)(6), which makes contributions to a bona fide plan tax deductible. In reality, it does not qualify under IRC §419A(f)(6) and could not support the promised tax benefits. The plan was devised solely to facilitate the sale of life insurance policies and the provision of administrative and legal services that would generate significant commissions. The Defendants have made millions of dollars with this arrangement and it is ongoing.

74. The Defendants engaged in a common plan, transaction and course of conduct described herein in connection with the design, promotion and sale of the Benistar 419 Plan, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon the Individual Plaintiffs and the Class.

75. The purpose and effect of the Defendants' plan, transaction, and course of conduct was to generate huge fees and commissions by selling insurance as part of the defective tax product at issue in this case – the Benistar 419 Plan.

76. While the Defendants participate in the enterprise and are a part of it, the Defendants also have an existence separate and distinct from the Enterprise.

77. Defendants maintain an interest in and control of the Enterprise and also conduct or participate in the conduct the Enterprise's affairs through a pattern of racketeering activity.

78. Defendants' control and participation in the Enterprise is necessary for the successful operation of Defendants' scheme.

79. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

**B. Operation of the RICO Enterprise**

PLAINTIFFS' ORIGINAL COMPLAINT

80.     419§A caught the attention of unscrupulous insurance salespeople for three reasons: 1) such plans can be funded with insurance; 2) there is virtually no cap on the amount of the contribution; and 3) an unlimited number of "employers" can participate.

81.     The appeal to the unscrupulous of selling 419 plans is that a *bona fide* plan can be closely mimicked, complete with voluminous paperwork, and a tax code section can be referenced to create the illusion of validity. What the victims of such a scheme don't know is: 1) the IRS has never approved a §419A(f)(6) insurance entrepreneurial enterprise plan so far as the pubic record shows; 2) a bona fide §419A(f)(6) plan consists of 10 or more employers who put their money into the fund for the benefit of *employees*, not themselves (the Benistar 419 Plan "participants" are small business owners who put the money in for themselves because they were told this was a retirement investment vehicle and a legitimate tax-savings strategy); (3) the plan must act like an insurance company – all the contributions go into one pot, no "experience rating" is allowed (that is, it must be similar to a group health plan, the loss experience of the group as a whole affects everybody's cost); 4) there cannot be any individualized accounting, *i.e.*, all of the 10 or more employers put their money in one account and there are no "earnings" or "increases" attributable to any identifiable contributor; and 5) none of the employers who put the money in can ever get it out; it only comes out to reimburse an employee or their beneficiaries for death or medical expenses[1] – and the amounts for these items must be fixed and described in the plan – just like an insurance policy.

82.     Insurance agents who form §419A plans recommend those plans purchase life insurance policies because 1) up to 90% of the first year premium goes to the agent as

---

[1] There are certain approved methods upon dissolution whereby plan assets can be distributed.

commission; 2) the policies are billed as an "investment" because they accumulate cash value – although compared to the expense, the potential returns are nominal; and 3) the premiums have to be paid for many years – and renewal commissions are paid or new policies are purchased every year. The lure, of course, is the money, which is also what attracts a sales force.

83.     The Defendants in this case (as well as other insurance salespeople promoting the Benistar 419 Plan) had to make plan contributions appear as a tax deductible investment to the "participants", but as a §419A plan to the IRS. They had to balance this with the need to constantly forage for clients who could put hundreds of thousands of dollars per year – for several years – into such a vehicle.

84.     Each of the Defendants played an important role in the success of the Enterprise:

        A. Benistar – The Benistar Defendants were responsible for creating, designing and establishing the Benistar 419 Plan and Trust. Additionally, they were responsible for producing misleading marketing materials regarding the Benistar 419 Plan and Trust, as well as training and supervising agents such as Defendants Lesley and Fogg, with respect to its sale and operation.

        B. The John Hancock Defendants and Pasciak Agency – The John Hancock Defendants and Pasciak Agency were the front-line promoters of the Plan. As explained herein, Defendant Lesley was a high school classmate of Plaintiff David Ouwinga. Together, Lesley and Fogg (as agents and representatives of both John Hancock Insurance Company and the Pasciak Agency) introduced the Plan to the Plaintiffs and delivered the sales pitch pursuant to the Defendants' pre-arranged plan.

C. The Edwards Angell Defendants – The Edwards Angell Defendants provided the legal "stamp of approval" in the form of a legal opinion that purported to approve of the tax benefits of the Plan. The Edwards Angell Defendants were aware of the fact the John Hancock Defendants and Pasciak Agency to trade on their name. Moreover, the Edwards Angell Defendants permitted their legal opinion to be used in the promotion of the Plan, and in fact to be one of the key factors that would give potential clients the peace of mind to participate in the Plan.

85. There is no question that the Defendants intended to commit mail and wire fraud in connection with the promotion and operation of the Benistar Plan because the IRS has made it clear since the issuance of Notice 95-34 on June 5, 1995 (more than 3 years before the Edwards Angell Defendants prepared their legal opinion and more than 6 years before the Benistar 419 Plan was introduced to the Plaintiffs) that so-called 10 or more employer plans like the Benistar 419 Plan did not qualify under §419A(f)(6) and that any deductions for money put into such plans would be disallowed.

86. Unfortunately, the "participants" (*i.e.*, the Plaintiffs and the Class) have been deemed by the IRS to have invested in an "abusive tax shelter", have been assessed penalties and interest by the IRS for the underpayment of taxes due to filing tax returns reflecting the promised tax benefits of the Benistar 419 Plan, and are continuing to incur tens of thousands of dollars in additional accounting and legal fees in connection with the IRS investigation of their tax returns.

C. **Predicate Acts**

87. With respect to the activities alleged herein, the Defendants acted at all times with malice toward the Plaintiffs and the Class, intent to engage in the conduct complained of for the benefit of Defendants and with knowledge that such conduct constituted unlawfulness. Such conduct was done with actionable wantonness and reckless disregard for the rights of Plaintiffs and the Class, as well as the laws to which the Defendants are subject, the same amounting to actionable wantonness.

88. With respect to the activities alleged herein, each Defendant and others not named as Defendants in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, were seeking to aid and abet and aiding and abetting a transaction to violate 18 U.S.C. §1962(c). Each Defendant also agreed to the operation of the transaction or artifice to deprive Plaintiffs and the Class of property interests. In furtherance of these agreements, each Defendant also agreed to interfere with, obstruct, delay or affect interstate commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled.

89. With respect to the overt acts and activities alleged herein, each Defendant conspired with each other and with others not named as Defendants in this Complaint, to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d). Each Defendant also agreed and conspired with each other Defendant to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled.

90. The numerous predicate acts of mail and wire fraud described herein are part of separate fraudulent transactions by Defendants designed to defraud the Individual Plaintiffs and the Class of money and property interests under false pretenses. As victims of these unlawful

patterns of illegal activity, Plaintiffs have and continue to suffer losses as a result of these activities.

91.    In carrying out the overt acts and fraudulent transaction described above, the Defendants engaged in, *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. § 1343 and 1346, and 18 U.S.C. § 1961 *et seq.*

92.    Section 1961(1) of RICO provides that "racketeering activity" means any act indictable under any of the following provisions of Title 18, United States Code: § 1341 (relating to mail fraud), §1343 (relating to wire fraud), and § 1346 (relating to scheme or artifice to defraud).

**D.    Violations of 18 U.S.C. § § 1341 and 1343**

93.    Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-92 as if fully set forth herein.

94.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal Service and received matter and things therefrom including but not limited to contracts, instructions, correspondence, opinion letters, and others.

95.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false, pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things

PLAINTIFFS' ORIGINAL COMPLAINT                                                                 Page 25

therefrom including but not limited to contracts, instructions, correspondence, opinion letters, funds, and others.

96. In those matters and things sent or delivered by the Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs and the Class as described above, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to the following:

- a. That the contributions to the Benistar Plan qualified as a deduction for federal income tax purposes;

- b. That the Benistar Plan complied with all federal tax laws and regulations; and

- c. That the Benistar plan was a suitable retirement investment.

97. The predicate acts of mail and wire fraud began at least as early as December 17, 1998 and continued until at least December 19, 2003. The Defendants, and the other wrongdoers, on their own and as part of a common fraudulent scheme and conspiracy, defrauded Plaintiffs as set out above.

98. The Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and the Class, for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs and the Class justifiably relied on the misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns using the treatment opined.

99. The Defendants made continual use of mail and wire transmissions to effectuate their fraudulent scheme. Additionally, the Defendants transmitted numerous specific fraudulent statements to Plaintiffs and the Class through the mail or by fax.

100. The Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and the Class, for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs and the Class justifiably and reasonably relied on the misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns using the treatment opined.

101. As set forth above, there are numerous specific examples of the predicate acts of mail and wire fraud committed by Defendants pursuant to their transaction to defraud Plaintiffs.

102. Plaintiffs have therefore been injured in their business or property by the Defendants' overt acts and racketeering activities.

**E.    Pattern of Racketeering Activity**

103. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-102 as if fully set forth herein.

104. As set forth above, the Defendants have engaged in a "pattern of racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a transaction for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar

purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs and the Class.

105. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

106. Plaintiffs and the Class therefore have been injured in their business or property as a result of Defendants' overt acts and racketeering activities as described above and throughout this Complaint.

## X.

## FIRST CLAIM

## VIOLATIONS OF RICO 18 U.S.C. § 1962(c)

### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

107. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-106 as if fully set forth herein.

108. Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

109. Plaintiffs incorporate, as though fully set out herein, their allegations regarding Enterprise.

110. Plaintiffs incorporate, as if fully set forth herein, their allegations that Defendants have engaged in a pattern of racketeering activity.

111. The Defendants, who are associated with and are part of the Enterprise conduct the Enterprise's affairs through a pattern of racketeering activity, as set forth in this Complaint. Through the fraudulent and wrongful conduct described in this Complaint, Defendants seek to deprive Plaintiffs and the Class of money and property rights. In order to successfully execute their scheme in the manner set forth in this Complaint, Defendants must have a system that allows Defendants to access their victims in a manner to effectuate the fraudulent transactions. The Enterprise allows the Defendants this access.

112. With respect to the activities alleged herein, the Defendants have acted at all times with malice toward Plaintiffs and the Class in their efforts to acquire and maintain an interest in an Enterprise that affects interstate commerce.

113. In carrying out the overt acts and fraudulent scheme described above, the Defendants have engaged in conduct in violation of federal laws, including *inter alia* 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § § 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, and 18 U.S.C. § 1961, et seq. as set forth more fully above.

114. Therefore, Defendants have each engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud)...."

115. As a proximate result of Defendants' unlawful pattern of illegal fraudulent conduct as described above, Plaintiffs and the Class have been injured in their business or property as described above.

## XI.

### SECOND CLAIM

### VIOLATIONS OF RICO 18 U.S.C. 1962(d) BY CONSPIRING

### TO VIOLATE 18 U.S.C. § 1962(c)

#### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

116. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-106 as if fully set forth herein.

117. This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from the Defendants' activities described herein for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(c).

118. Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) or (c) of this section."

119. Plaintiffs incorporate, as though fully set out herein, their allegations regarding Enterprise.

120. Plaintiffs incorporate, as if fully set forth herein, their allegations that Defendants have engaged in a pattern of racketeering activity.

121. Absent Defendants' conspiracy and joint efforts, Defendants' scheme would not be successful. Acting jointly, Defendants have and have had greater power, have been able to exert greater influence, have been able to successfully engage in the activities set forth herein, and have had greater ability to conceal their activities.

122. Defendants have also violated § 1962(d) by conspiring to violate 18 U.S.C. §1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprise(s) described previously through a pattern of racketeering activity.

123. Defendants, their employees, and multiple agents have been joined in the conspiracies to violate 18 U.S.C. §1962(c) in violation of § 1962(d) by various third parties not named as Defendants herein, such as other insurance salespeople and "local offices".

124. As demonstrated in detail above, the Defendants and their co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud the Individual Plaintiffs and the Class of money and other property interests.

125. The nature of the above described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

126. As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiffs and the Class have been and are continuing to be injured in their business or property as set forth more fully above.

127. The Defendants have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering

predicate acts that have and continue to generate income or proceeds received by Defendants from such pattern of racketeering activity, including:

a.  Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343; and

b.  Multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud and wire fraud.

128.  As a proximate result of Defendants' conduct as described above, Plaintiffs and the Class have been injured in their business or property as described above.

## XII.

## THIRD CLAIM

## FRAUDULENT MISREPRESENTATION/OMISSION

## BY ALL PLAINTIFFS AGAINST THE BENISTAR AND JOHN HANCOCK DEFENDANTS

129.  Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

130.  The Defendants made or caused to be made, *inter alia,* the following material misrepresentations, omissions, or misleading statements to Plaintiffs prior to the establishment of the Plans:

a.  That their contributions to the Benistar Plan would be fully deductible and that monies could later be withdrawn via loans "tax free";

b.  That the Benistar Plan complied with all federal tax laws and regulations; and

c.  That the Benistar plan was a suitable retirement plan.

32

131. The Defendants also failed to disclose the following material facts to Plaintiffs:

a. That there were significant tax risks associated with funding a 419A(f)(6) plan and then using those funds to purchase the insurance policies issued by the John Hancock Defendants;

b. That professional advisors for Benistar and the John Hancock Defendants had expressly warned them about such risks and advised them not to market these insurance policies for purchase by and use in a 419A(f)(6) plan;

c. That the 419A(f)(6) program might be deemed abusive by the IRS;

d. That the IRS had issued numerous announcements and notices over the years addressing many of the same characteristics this 419A(f)(6) program and explaining that such characteristics are contrary to federal tax laws and regulations;

e. Failing to disclose the actual roles of each Defendant in the Plan;

f. Failing to disclose that the Defendants were splitting and/or sharing fees;

g. Failing to fully explain the details of the Benistar Plan and assure Plaintiffs understood the Plan before inducing Plaintiffs to enter into it;

h. Failing to disclose to Plaintiffs that if they filed tax returns claiming a deduction for contributions to the Benistar Plan, the IRS would contend they would be liable for penalties and interest; and

i. Making and endorsing the statements and representations in the legal opinion authored and signed by Edwards Angell.

33

132. The Defendants knew that their misrepresentations/omissions were false when they made them. Alternatively, the Defendants made these representations/omissions with a conscious disregard of the rights and interests of Plaintiffs, and for the purpose of enriching themselves and jeopardizing the financial well being of Plaintiffs. The Defendants acted maliciously, oppressively, and with the intent to defraud Plaintiffs.

133. The Defendants intended for Plaintiffs to rely on each of these misrepresentations and/or omissions.

134. Plaintiffs justifiably relied on each of these misrepresentations and/or omissions by the Defendants.

135. The misrepresentations and/or omissions by the Defendants proximately caused the damages suffered by Plaintiffs.

136. Accordingly, Plaintiffs are entitled to recover their actual damages as well as punitive or exemplary damages.

## XIII.

## FOURTH CLAIM

## NEGLIGENT MISREPRESENTATION

### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

137. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

138. The Defendants made or caused to be made the following false representations to Plaintiffs in the course of the Defendants' business or in a transaction in which they had a pecuniary interest prior to the establishment of the Plans:

a. That the life insurance policies to be issued by the John Hancock Defendants were appropriate for purchase by and use in a qualified 419A(f)(6) plan;

b. That the contributions to the Benistar Plan qualified as a deduction for federal income tax purposes;

c. That the Benistar Plan complied with all federal tax laws and regulations; and

d. That the Benistar plan was a suitable retirement plan.

139. In addition to the foregoing, in December of 1998, October of 2003 and December of 2003, Edwards Angell negligently misrepresented that the Plaintiff and Class Members would prevail in an IRS challenge on the following issues: (1) the Benistar 419 Plan is a plan as described in § 419A(f)(6); (2) the Benistar 419 Plan is a welfare benefit plan and is not a plan of deferred compensation; (3) that the Employer is entitled to a current deduction for a contribution to the Benistar 419 Plan pursuant to § 162(a); (4) the Benistar 419 Plan is not a tax shelter as described in § 6111; (5) the Benistar 419 Plan is not a "Potentially Abusive Tax Shelter" or "Listed Transaction" as described in Reg. § 301.6112-1(b)(2); (6) the Benistar 419 Plan is not subject to the list maintenance requirements of § 6112; and (7) contributions by an employer to the Benistar 419 Plan to provide death benefits for employees does not trigger a reporting obligation under § 6011.

140. The Defendants did not exercise reasonable care or competence in obtaining or communicating the information contained in these false representations.

141. Plaintiffs justifiably relied on each of these representations by the Defendants.

142. The negligent misrepresentations by the Defendants proximately caused the damages suffered by Plaintiffs.

143. Accordingly, the Individual Plaintiffs and the other Class members have sustained substantial losses and damage to their business and property in the form of substantial expenses incurred in setting up and establishing the deficient plan, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, lost retirement benefits, lost other retirement opportunities, and have suffered other damages.

## XIV.

## FIFTH CLAIM

## UNJUST ENRICHMENT

### BY ALL PLAINTIFFS AGAINST THE BENISTAR AND JOHN HANCOCK DEFENDANTS

144. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

145. The Plaintiffs contributed money to the Benistar Plan that was used to pay fees and premiums to the Benistar and John Hancock Defendants. Had the Plaintiffs not been enticed to enter into the Plan, they would not have paid such monies and fess and premiums would not have been paid to the Benistar and John Hancock Defendants.

146. In paying monies that were used to pay fees and premiums to the Benistar and John Hancock Defendants, the Plaintiffs conferred a benefit on them.

147. The Benistar and John Hancock Defendants knowingly accepted and retained these benefits. At the time they accepted, the Benistar and John Hancock

36

Defendants were or should have been aware that the IRS would claim that the Plans were invalid and that the Plaintiffs might not receive the benefit of what they paid for.

148. Under the circumstances, it would be inequitable for the Benistar and John Hancock Defendants to retain these benefits.

149. Thus, the Benistar and John Hancock Defendants have been unjustly enriched and all fees and premiums paid to them should be returned to Plaintiffs.

## XV.

## SIXTH CLAIM

## BREACH OF FIDUCIARY DUTY

### BY ALL PLAINTIFFS AGAINST THE BENISTAR AND JOHN HANCOCK DEFENDANTS

150. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

151. Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if fully set forth herein.

152. The Benistar and John Hancock Defendants were Plaintiffs' fiduciaries, and thus owed Plaintiffs duties of honesty, loyalty, and care.

153. These Defendants breached their fiduciary duties to Plaintiffs by, among other things:

(1) Failing to disclose the actual roles of each Defendant in the Benistar Plan;

(2) Failing to disclose that the Defendants were splitting and/or sharing fees;

(3) Failing to fully explain the details of the Benistar Plan and assure Plaintiffs understood the tax strategy before inducing Plaintiffs to enter into the Benistar Plan;

37

(4)     Failing to disclose to Plaintiffs that if they filed tax returns claiming deductions for contributions to the Benistar Plan, the IRS would contend they would be liable for penalties and interest;

(5)     Making and endorsing the statements and representations in the Opinion Letters authored and signed by Edwards Angell;

(6)     Making and endorsing the statements and representations contained in the Defendants' oral advice, instructions, and recommendations with respect to the Benistar Plan

(7)     Failing to accurately and fully explain the Benistar Plan to Plaintiffs and ensure they understood such Plan before Plaintiffs engaged in the transaction;

(8)     Failing to advise Plaintiffs that the Benistar Plan was not in compliance with § 419A(f)(6);

(9)     Advising Plaintiffs that the design of Benistar Plan was in compliance with § 419A(f)(6);

(10)    Failing to learn the facts as to whether the Benistar Plan was appropriate for the Plaintiffs, either as an investment or as part of a tax strategy;

(11)    Failing to fully and properly inform and advise Plaintiffs of the various IRS Notices and their implications on the Benistar Plan;

(12)    Failing to comply with their ethical obligations to the Plaintiffs;

(13)    Advising, recommending, instructing, and assisting Plaintiffs in engaging in a transaction which they were advised was in compliance with § 419A(f)(6);

38

(14) Advising, recommending, instructing, and assisting Plaintiffs in entering into a welfare benefit plan that, unbeknownst to the Plaintiffs, was illegal and improper and would be challenged by the IRS on the grounds the plan was not in compliance with § 419A(f)(6).

154.    As a result of these Defendants' conduct as set forth herein, Plaintiffs have sustained substantial losses and damage to their business and property in the form of substantial expenses incurred in setting up and establishing the deficient plan, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, lost retirement benefits, lost other retirement opportunities, and have suffered other damages.    All members of the Class were affected in the same manner by Defendants' fraudulent and/or wrongful conduct.

## XVI.

## SEVENTH CLAIM

## BREACH OF CONTRACT

#### BY ALL PLAINTIFFS AGAINST THE BENISTAR AND JOHN HANCOCK DEFENDANTS

155.    Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

156.    In 2001 and 2003 Plaintiffs entered into oral, implied and/or written contracts with the Benistar and John Hancock Defendants to design and install the Benistar Plan, including the purchase of John Hancock life insurance policies by the Plan.

157.    Plaintiffs fully performed their obligations to the Benistar and John Hancock Defendants under these contracts and thus did not contribute to the Defendant's breaches in any way.

158. The Benistar and John Hancock Defendants ignored their obligations and instead failed to design and install the Benistar Plan as represented, including the purchase by the Plan of the John Hancock policies. Accordingly, the Benistar and John Hancock Defendants failed to exercise the standard of care required of and breached their contracts with Plaintiffs.

159. As a result of the Defendants' conduct, Plaintiffs and the other Class members have sustained substantial losses and damage to their business and property in the form of substantial expenses incurred in setting up and establishing the deficient plan, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, lost retirement benefits, lost other retirement opportunities, and have suffered other damages. All members of the Class were affected in the same manner by Defendants' wrongful conduct.

## XVII.

## EIGHTH CLAIM

### VIOLATION OF STATE CONSUMER PROTECTION LAWS

#### BY ALL PLAINTIFFS AGAINST THE BENISTAR AND JOHN HANCOCK DEFENDANTS

160. Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1-68 as if fully set forth herein.

161. Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she resides.

162. The consumer protection laws of the state in which each Plaintiff and member of the Class resides declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

163. Thirty-eight states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

   a.  Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq.*;

   b.  Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.*;

   c.  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

   d.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

   e.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

   f.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

   g.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.*;

   h.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

   i.  Georgia Fair Business Practices Act, §10-1-390 *et seq.*;

   j.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

   k.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

   l.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

   m.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.*;

   n.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;

41

o.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*;

p.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*,

q.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

x.  Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

aa.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.*;

bb.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.*;

cc.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

dd.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

ee.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

ff.  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

gg.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

42

   hh.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10,
          *et seq.*;

   ii.    South Dakota's Deceptive Trade Practices and Consumer Protection
          Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

   gg.    Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §
          17.01 *et seq.*;

   hh.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

   ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et
          seq.*;

   mm.    West Virginia Consumer Credit and Protection Act, West Virginia
          Code § 46A-6-101, *et seq.*;

   nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

164.    In the promotion, sale, and implementation of the Benistar Plan (which

constituted "the conduct of trade or commerce"), the Benistar and John Hancock

Defendants committed or engaged in various unfair, unconscionable, and deceptive

methods, acts, or practices.

165.    These unfair, unconscionable, and deceptive methods are set out herein

and constitute, *inter alia*, the following:

   (1)    failing to reveal a material fact, the omission of which tends to mislead or
          deceive the consumer, and which fact could not reasonably be known by
          the consumer;

   (2)    causing a probability of confusion or of misunderstanding as to the legal
          rights, obligations, or remedies of a party to a transaction;

   (3)    making a representation of fact or statement of fact material to the
          transaction such that a person reasonably believes the represented or
          suggested state of affairs to be other than it actually is; and

   (4)    failing to reveal facts that are material to the transaction in light of
          representation of fact made in a positive manner.

166.    In reasonable reliance on the Benistar and John Hancock Defendants'

deceptive acts, the Individual Plaintiffs and the other Class members have sustained

substantial losses and damage to their business and property in the form of substantial

43

expenses incurred in setting up and establishing the deficient plan, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, lost retirement benefits, lost other retirement opportunities, and have suffered other damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the other Class members, respectfully pray:

a. that the Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action be given to the Class;

b. that the acts alleged herein be adjudged and decreed to be unlawful in violation of the federal and state claims asserted herein;

c. that the Class recover three-fold the damages determined to have been sustained by them pursuant to 18 U.S.C. § 1964(c) and state law, and that joint and several judgments be entered against Defendants in favor of the Class;

d. that the Class recover the costs and expenses of suit, pre- and post-judgment interest, and reasonable attorney fees as provided by law;

f. that Defendants be enjoined from continuing or resuming their unlawful acts discussed above;

g. Compensatory damages in an amount to be ascertained at trial and/or rescission;

h. Punitive or exemplary damages in an amount to be ascertained at trial;

44

i.      Additional damages pursuant to applicable state or law;

j.      Pre-judgment and post-judgment interest at the maximum rate permitted

by contract, law, or equity;

k.      Reasonable attorneys' fees and costs;

l.      All other relief, in law or in equity, to which Plaintiffs may be entitled;

and

m.      the Individual Plaintiffs and the Class be granted such other, further relief

as may be determined to be just, equitable and proper by this Court.


Respectfully submitted,

DILLEY HANEY, P.C.    *Fredrick D.Dilley*    CANADA RIDLEY, L.L.P.
              *w/permission*    W. Ralph Canada, Jr.
              *pd*    W. Bruce Woody

Frederick D. Dilley (P26090)    223 E. College St.
330 E. Fulton    Grapevine, Texas 76051
Grand Rapids, MI 49503    817-329-2003
(616) 235-2300

LOCAL ATTORNEYS FOR PLAINTIFFS    ATTORNEYS FOR PLAINTIFFS


WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr.
1540 Broadway
37th Floor
New York, NY 10036
(212) 447-7070

Jeven R. Sloan
2001 Park Place North
Suite 1000
Birmingham, Alabama 35203
(205) 328-9576

ATTORNEYS FOR PLAINTIFFS